IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ANTON PEREVOZNIKOV,<br><br>Defendant. | CRIMINAL NO. 15-441 |

**OPINION**

**Slomsky, J.**  November 27, 2023

## I. INTRODUCTION

Pro se Defendant Anton Perevoznikov ("Defendant"), who is serving a 48-month sentence, moves for compassionate release pursuant to 18 U.S.C. § 3582(C)(1)(A)(i). (Doc. No. 122.) Defendant requests that his sentence be reduced to time served followed by three years supervised release. (Id. at 1.) In his Motion, Defendant submits that compassionate release should be granted for five reasons, which he contends are extraordinary and compelling. (Id. at 1-2.) First, he notes that his shoulder injury is untreated in prison and is causing him "tremendous pain" and disability. (Id.) Second, he states that his eyesight is deteriorating due to harsh fluorescent lighting in prison and lack of access to natural light. (Id.) Third, he argues that his high blood pressure has been exacerbated by poor nutrition. (Id.) Fourth, he submits that he is suffering from chronic bronchitis and asthma. (Id.) Finally, he argues that he needs to care for his mother who is suffering from long Covid. (Id.) Defendant also adds that he is a non-violent offender, has already completed 66% of his sentence, and has cooperated with the Government. (Id. at 2.) Defendant contends that these reasons warrant reducing his sentence to time served under 18 U.S.C. § 3582(C)(1)(A)(i). (Id.)

1

The Government opposes Defendant's Motion, arguing that he "does not present an 'extraordinary and compelling reason' under the statute" and that the sentencing factors set forth in 18 U.S.C. § 3553(a) do not warrant compassionate release. (See Doc. No. 125.)

For the reasons that follow, Defendant's Motion for Compassionate Release (Doc. No. 122) will be denied.

## II.   BACKGROUND

### A.   Defendant's Criminal History

Between February 2011 and November 2013, Defendant purchased or attempted to purchase defense articles, including night vision and thermal imaging devices, to ship them without a license to co-conspirators in Russia. (Id. at 5.) Thereafter, they were exported from the United States to co-conspirators in Russia under false descriptions such as "case box," "case for camera," and "jacket." (Id. at 6.) On October 24, 2018, Defendant pled guilty to one count of conspiracy to unlawfully export defense articles, in violation of 18 U.S.C. § 371. (Doc. No. 78.) On August 31, 2021, he was sentenced to 48-months in prison. (Id.)

Additionally, after Defendant pled guilty on October 24, 2018, and while he was supposedly cooperating with the Government, Defendant engaged in "a transnational criminal conspiracy- this time involving the illegal export from the United States to Russia of millions of dollars of stolen electronics." (Doc. No. 125 at 3.) This conduct took place in 2019 while Defendant was living at his home in New York. (Id.) Defendant was indicted for this conspiracy in the Eastern District of New York, and he pled guilty to Count One: Conspiracy to File Export Information, Smuggle Electronic Devices, and Defraud the United States, in violation of 18 U.S.C. § 371. (See id.)

Defendant was sentenced by the Honorable Allyne R. Ross of the Eastern District of New York to a term of imprisonment of 18 months, to run consecutively to the term imposed by this Court. (Id.) Defendant is currently serving his sentences at the Federal Correctional Institution at Danbury, Connecticut ("FCI Danbury"). (Doc. No. 125 at 4.) He has served approximately 41 months of his combined sentences of 66 months.

B.   **Defendant's Motion for Compassionate Release**

On November 27, 2021, Defendant submitted an informal request for compassionate release to the Warden at the Metropolitan Detention Center in Brooklyn, New York ("MDC Brooklyn"), citing the "totality of [his] circumstances." (Doc. No. 122 at 7.) The record is silent as to whether the Warden took any official action on this request. On January 28, 2023, after his arrival at FCI Danbury, Defendant made a more formal request to the Warden for compassionate release. (Id. at 4-5.) The Warden made no response to this request. (Id.) The Government concedes that thirty days have elapsed since the request, and Defendant has satisfied the administrative exhaustion requirement of § 3582(C)(1)(A). (Doc. No. 125 at 5.)

On March 1, 2023,[1] Defendant filed his pro se Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(C)(1)(A)(i). (Doc. No. 122.) Defendant contends that his health conditions, the unwillingness of the Bureau of Prisons to treat those conditions properly, and the declining health of his mother warrant his release from custody. (Id. at 1-3.) Specifically, Defendant alleges that he has suffered from "tremendous pain" and numbness in his shoulder that makes ordinary activities such as sleeping and exercise difficult. (Id. at 2.) Defendant supports this assertion with proof of a diagnosis made on October 5, 2020 of tenosynovitis and adhesive capsulitis. (Id. at 37.) Defendant also claims to have deteriorating vision, high blood pressure and cholesterol, chronic

---

[1] Defendant's pro se Motion was docketed on March 10, 2023.

3

bronchitis, and asthma. (Id. at 2.) Defendant further notes that his mother has long Covid and is unable to work or care for herself properly. (Id.) Defendant claims that, if released, he would provide care for his mother. (Id.) Defendant argues that these factors constitute "extraordinary and compelling reasons to grant . . . his request for compassionate release." (Id. at 1.)

Regarding the § 3553(a) sentencing factors, Defendant notes that he has served "a substantial portion (66%) of [his]sentence." (Id. at 3.) Furthermore, he contends that his status as a non-violent offender, his contributions to society as a business owner, and his "clean disciplinary record in jail" weigh in favor of his release. (Id.)

### C. The Government's Response in Opposition to Defendant's Motion

On June 15, 2023, the Government filed a Response in Opposition to Defendant's Motion. (Doc. No. 125.) In its Response, the Government argues that Defendant's Motion "should be denied, given that the defendant does not present an 'extraordinary and compelling reason' allowing consideration under the statute for this exceptional remedy." (Id. at 1.) In addition, the Government submits that Defendant's family circumstances do not warrant relief. (Id.) The Government also notes that release is not warranted under the sentencing factors set forth in 18 U.S.C. § 3553(a). (Id.)

First, the Government argues that release is not warranted on medical grounds. (Id. at 12.) It notes that Defendant's shoulder injury does not constitute "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." (Id.) Instead, the Government avers that Defendant's concerns are merely complaints about the quality of care he is receiving, which is more appropriately addressed in administrative and civil fora. (Id. at 13.) The Government further adds that Defendant has failed to complete the

administrative appeals process following a denial of his administrative complaint, and Defendant should complete that process. (Id.) The Government also argues that compassionate release guidelines only apply to medical conditions

> that, by their nature, cannot be treated effectively in prisons. It does not encompass medical conditions that are treatable in prison, even when treatment appears to be inadequate . . .

(Id.) The Government further asserts that Defendant's other conditions, including asthma, bronchitis, vision deterioration, and high blood pressure are "ordinary conditions that are treated with medication and do not appear to be posing any significant difficulties." (Id. at 14.)

Second, the Government argues that Defendant's family circumstances do not warrant compassionate release. (Id.) It submits that Defendant has failed to carry his burden to show that his mother is disabled or requires extensive or particular care. (Id.) It also notes that he has not established that he is the only available caretaker. (Id.) And based on Defendant's Motion, his fiancé appears to be available to care for his mother while he is incarcerated. (Id.)

Third, the Government submits that consideration of 18 U.S.C. § 3553(a) sentencing factors do not warrant compassionate release here. (Id. at 15.) It points to the nature of Defendant's offense, his criminal history, his commission of additional federal crimes while this case was pending and when he was purportedly cooperating with the government, the need for deterrence, and the need to promote respect for the law as all weighing against granting Defendant's Motion. (Id. at 16.) The Government argues that there is "no confidence whatsoever that [Defendant] would obey the law if released after serving only half of the combined sentences." (Id. at 17.)

### III.  DISCUSSION

#### A. The Analytical Framework Regarding Motion for Compassionate Release Pursuant to Section 3582(c)

Generally, a district court "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c).  There are, however, "a few narrow exceptions" to this general "rule of finality[,]" including the compassionate release statute § 3582(c)(1)(A).  Freeman v. United States, 564 U.S. 522, 526 (2011).  As amended by the recently enacted First Step Act, Section 3582(c)(1)(A) empowers a district court to modify a term of imprisonment on a defendant's motion after the defendant has exhausted his administrative remedies.  See § 3582(c)(1)(A).  The statute provides, in part, that:

> the Court, upon Motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [§ 3553(a)] to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

§ 3582(c)(1)(A).  Congress, however, has not specifically defined the term "extraordinary and compelling reasons," except to the extent that "[r]ehabilitation of the defendant alone" is insufficient to constitute an extraordinary and compelling reason.  28 U.S.C. § 994(t).  Instead, Congress delegated the authority to define "extraordinary and compelling reasons" to the United

6

States Sentencing Commission. Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), . . . that—
>
> (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) the defendant is not a danger to the safety or any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13(a)(1)-(3).

Under Section 1B1.13(b), "extraordinary and compelling reasons" exist under any of the following circumstances or a combination thereof. Further, Section 1B1.13(b) lists three specific qualifying circumstances: (1) a defendant's medical condition, (2) age, or (3) family circumstances. § 1B1.13 (b)(1)-(3). This Note states:

(1) MEDICAL CIRCUMSTANCES OF THE DEFENDANT. —

 (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

 (B) The defendant is—

  (i) suffering from a serious physical or mental condition,

  (ii) suffering from a serious functional or cognitive impairment, or

  (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a

        correctional facility and from which he or she is not expected to recover.

- (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided without which the defendant is at risk of serious deterioration in health or death.

- (D) The defendant presents the following circumstances—

    - (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

    - (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

    - (iii) such risk cannot be adequately mitigated in a timely manner.

(2) AGE OF THE DEFENDANT. —The Defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(3) FAMILY CIRCUMSTANCES OF THE DEFENDANT. —

- (A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

- (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

- (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

    (D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family members or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of his provision, "immediate family member" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

*   *   *

§ 1B1.13 (b)(1)-(3).

The Third Circuit has noted that "if a court finds that [extraordinary and compelling reasons] exist, it then turns to the sentencing factors in 18 U.S.C. § 3553(a) to determine whether compassionate release is appropriate." <u>United States v. Stewart</u>, No. 22-2770, 2023 WL 7509457, at *1 (3d Cir. Nov. 14, 2023). Section 3553(a) establishes factors for a court to consider in initially imposing a sentence. Not every factor is applicable, however, when considering a motion for compassionate release. In the instant case, the applicable factors are:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

    . . . [and]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

§ 3553(a)(1)-(2), (6).  Therefore, if a balance of a defendant's extraordinary and compelling reasons with the § 3553(a) factors support a reduced sentence, and that reduction is consistent with applicable policy statements of the Sentencing Commission, a court may reduce a defendant's prison term, modify the terms of supervised release, or both.

### B. Defendant's Motion for Compassionate Release Will Be Denied

Defendant's Motion will be denied because he has not demonstrated an extraordinary and compelling reason for his release.  Furthermore, the relevant § 3553(a) weigh against a reduction or modification of his sentence.[2]  Each of these conclusions is discussed seriatim.

#### 1. Defendant's Medical Conditions Do Not Present an Extraordinary and Compelling Reason for His Release

To start, none of Defendant's medical conditions present an extraordinary and compelling reason for his release.  Defendant contends that he has shown extraordinary and compelling reasons for his release based on the pain and decreased function caused by his shoulder injury, deterioration in his vision, high blood pressure, asthma, and bronchitis.  (See Doc. No. 122 at 2.) However, the medical records show that Defendant has received treatment for his conditions. (Doc. No. 123.)  Specifically, Defendant has seen a doctor multiple times in relation to his shoulder injury.  (See id. at 2, 47, 53.)  Defendant has received painkillers such as Naproxen to manage his shoulder pain.  (See id. at 53.)  In addition, on October 4, 2022, Defendant underwent an x-ray and

---

[2] Because the Motion for Compassionate Release is being denied for these reasons, there is no need to decide if a reduction is consistent with policy statements of the Sentencing Commission.

received a corticosteroid injection. (<u>See</u> <u>id.</u> at 31, 50.) Since January 11, 2023, Defendant has had three additional corticosteroid injections which have lessened his pain. (<u>See</u> Doc. No. 135 at 1.)

Further, Defendant has seen a doctor about his vision, but this doctor was unable to diagnose any specific medical issue with his eyesight. (<u>See</u> Doc. No. 122 at 2.) In response to Defendant's complaints about his vision, an eye doctor prescribed him a new pair of glasses. (<u>See</u> <u>id.</u> at 2.) Also, Defendant was given an inhaler to manage his asthma and bronchitis. (<u>See</u> <u>id.</u>) Moreover, Defendant initially refused medication to treat his blood pressure, preferring instead to rely on diet and exercise to manage this condition. (<u>Id.</u>) Subsequently, he was prescribed Propranolol to manage his blood pressure. (Doc. No. 123 at 20.) Accordingly, his treatable medical conditions do support a request for compassionate release, even if he believes that he has received inadequate treatment to date. (<u>Id.</u> at 14.) (citing <u>United States v. Miller</u>, 2021 WL 2711728, at *3 (N.D. Cal. July 1, 2021)).

Courts have routinely held that "no extraordinary and compelling reason exists when [a] [f]acility monitors and manages an incarcerated person's medical conditions with medication." <u>United States v. Pigford</u>, No. CR 20-414, 2023 WL 2285825, at *3 (E.D. Pa. Feb. 28, 2023); <u>see also</u> <u>United States v. Weidenhamer</u>, No. CR1601072001PHXROS, 2019 WL 6050264, at *5 (D. Ariz. Nov. 8, 2019). In <u>Pigford</u>, the defendant claimed that severe knee pain, high blood pressure, and an increased risk of contracting COVID-19 entitled him to compassionate release. <u>Pigford</u>, 2023 WL 2285825, at *1. The Court found that "chronic conditions managed in a [f]acility are not a sufficient basis for compassionate release." <u>Id.</u> at *3. The Court also held that "although [the defendant] disagrees with the type of care the Bureau provides him . . . his medical complaints are not enough to establish his [condition] cannot be accommodated while he is incarcerated." <u>Id.</u> at *4.

11

Defendant disagrees with the type of care the Bureau of Prisons provides him, and claims that it is inadequate. (See id. at 2.) However, his complaints are not sufficient to establish that his medical conditions cannot be treated while he is incarcerated. The Bureau of Prisons continues to manage Defendant's medical conditions, which do not constitute extraordinary and compelling reasons for release. Instead, Defendant should pursue the available administrative means to address any inadequacies in his medical care. Defendant is not "suffering from a serious…medical condition…that substantially diminishes [his ability] to provide self-care within the environment of a correctional facility." Id. (quoting Sent'g Guidelines Manual § 1B1.13 cmt. n.1).

### 2. Defendant's Family Circumstances Do Not Present an Extraordinary and Compelling Reason for His Release

Although the Court sympathizes with Defendant's family circumstances, they are not extraordinary and compelling reasons to warrant compassionate release. Defendant states that his mother is 62 years old, that he is her only child, that she speaks very little English, and that she has long Covid which has left her unable to work and in need of living assistance. (Doc. No. 122 at 2.) Yet, Defendant does not explicitly state or explain why his presence is uniquely required to care for his mother. Defendant states that if released he would "live with [his fiancé] and [his] mother would live with [them] in Brooklyn." (Id.) But Defendant has not demonstrated that his fiancé is unable to care for his mother, or that another caregiver is entirely unavailable. As such, Defendant has not shown that his family circumstances are so extraordinary and compelling as to warrant compassionate release.

### 3. The § 3553(a) Sentencing Factors Weigh Against Defendant's Release

The relevant § 3553(a) factors also do not support Defendant's compassionate release. First, the Court has examined the nature and circumstances of the offense and Defendant's history and characteristics. See 18 U.S.C. § 3553(a)(1). Although Defendant asserts that he is "a non-

12

violent offender who has never been a threat to another person" (Doc. No. 122 at 3), the offenses that led to his incarceration are serious crimes. Defendant conspired to export defense articles without a license. (See Doc. No. 79 at 1.) Additionally, Defendant pled guilty to similar offenses in June of 2021 in the Eastern District of New York, after having already pled guilty in this case and while purportedly cooperating with the Government and refraining from illegal activity. (See Doc. No. 99.) On February 16, 2023, Defendant was sentenced to an additional term of 18 months imprisonment to run consecutively to the 48 months to which he was sentenced by this Court less than a month before he filed his Motion for Compassionate Release. (See Doc. No. 237.) Considering the foregoing, the Court is not assured that Defendant would be deterred from committing additional crimes if released.

      The Court has also considered whether Defendant's release would reflect the seriousness of his offenses, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by him. See 18 U.S.C. § 3553(a)(2)(A)-(C). Although Defendant has served approximately two-thirds of his combined 66-month sentence, his crimes warrant the sentence he received. And despite Defendant's contention that he "has never been a threat to another person" (Doc. No. 122 at 3), the seriousness of his offenses, the fact that he committed further federal crimes while purportedly cooperating with the Government and while released on bail set by this Court, warrants denial of relief. It is evident that his release at this point would not reflect the seriousness of his offenses, promote respect for the law, provide just punishment, afford adequate deterrence, nor protect the public from further crimes he may commit.

      Finally, the Court has considered the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. See 18 U.S.C. § 3553(a)(6). Defendant received a sentence within the range set by the Sentencing Guidelines,

which Congress created specifically to address sentencing disparities. To reduce Defendant's sentence would frustrate the Sentencing Commission's goal of avoiding unwarranted sentence disparities among similarly situated defendants and ensuring consistent punishment for similar offenses. Therefore, none of the applicable § 3553(a) factors favor Defendant's release.[3]

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3553(c)(1)(A)(i) (Doc. No. 122) will be denied. An appropriate Order follows.

---

[3] The Court has also examined the other reasons set forth in USSG Section 1B1.3(b) that would amount to extraordinary and compelling reasons. None apply to this Defendant.